IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES GORDON, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-6365 |
| | : | |
| C/O GARVIN, | : | |
|     Defendant. | : | |

MEMORANDUM

**MARSTON, J.**                                                                                                                                    January 15, 2025

        Plaintiff James Gordon, who is currently incarcerated at SCI Rockview, brings this *pro se* action alleging violations of his civil rights while incarcerated at SCI Phoenix. Gordon sued Correctional Officer Garvin in his individual capacity and now seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Gordon *in forma pauperis* status and partially dismiss his Complaint. He will be given leave to file an amended complaint if he can cure the deficiencies noted by the Court.

**I.     FACTUAL ALLEGATIONS[1]**

        Gordon's claims pertain to an alleged excessive force incident that occurred while he was incarcerated at SCI Phoenix in the Level 5 housing "B" unit. As alleged, Gordon filed a grievance against Officer Garvin on January 27, 2023, "for threats, humiliation, and mental abuse." (Doc. No. 2 at 2.) He contends that Officer Garvin had been "talking to [him] recklessly" because his cellmate, who was Gordon's friend, previously filed a successful lawsuit

---

[1] The factual allegations set forth in this Memorandum are taken from the Complaint (Doc. No. 2). The Court assumes their truth for purposes of this motion. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The Court also adopts the sequential pagination assigned by the CM/ECF docketing system.

against Officer Garvin. (*Id.*) Gordon asserts that Officer Garvin "was burning us for all breakfast and lunch trays every time he worked the Level 5 housing unit." (*Id.*)

Gordon suffers from mental health issues, and he claims that Officer Garvin's alleged mental abuse triggered Gordon's psychosis. (*Id.*) After Gordon "had words" with Officer Garvin, Officer Garvin "found out [Gordon's] family's information and told [Gordon] that [he] could get [Gordon's] mother touched in these streets." (*Id.*) Gordon claims that Officer Garvin provoked him every day, resulting in Gordon being placed in "P.O.C. aka suicide watch" because he feared for his life and that of his family. (*Id.*)

To prevent future conflict, Gordon sought help from "B-Unit psychologist Mariello," "Doctor G.," Doctor Matteo, Deputy Sipple, and Unit Manager Fanrak, regarding the alleged mental abuse. (*Id.*) According to Gordon, "all people agreed not to have Officer Garvin around" him. (*Id.*) However, after Gordon was removed from suicide watch on February 1, 2023, Officer Garvin returned to B-Unit five days later. (*Id.*) Gordon claims that Officer Garvin's threats and harassment became more severe, causing Gordon loss of sleep, loss of appetite, and serious depression. (*Id.*) Gordon further alleges that an altercation followed:

> On February 7, 2023, I feared for my life and out of emotions I []reacted to one of Officer Garvin[']s verbal threats and jumped at him in an attempt to strike him while walking to the Level 5 housing unit yard. Let me remind the Court I was in handcuffs and instead of restraining me, C/O Garvin started to throw punches even after I surrendered[.] [A]nother John Doe Officer in the yard started punching me. I was handcuff[ed] the entire time that both officers jumped me.

(*Id.*)[2]

---

[2] Gordon avers that while he was housed on the Level 5 unit, he "was in the hole housed where mentally disable[d] inmates are housed." (Doc. No. 2 at 2.)

2

Gordon attached to his Complaint a copy of a grievance dated February 8, 2023, concerning Officer Garvin's alleged use of excessive force the prior day. (*See id.* at 8.) Also attached is the Initial Review Response to this grievance. (*Id.* at 9–10.) Gordon contends that prison officials interfered with this and prior grievances. He alleges that "the same officers who are a part of the problem are the ones who take inmate mail off the cell doors. So Officer Garvin and other John Doe officers have sabotage[d] my grievance appeal. After seeking legal help, I was told that the court[] recognizes that some defendants sabotage[] prisoners['] grievances." (*Id.*) Gordon contends that after he was transferred from SCI Phoenix, his grievance appeals did not follow him, as they should. (*Id.*) Gordon further asserts that he exhausted all grievance remedies. (*Id.*) He claims that "prison officials['] retaliation happen[ed] when they did not respond to grievances and/or prevent[ed] an inmate access to [the] prison grievance system. . ." (*See id.* at 4.)

Gordon filed this action on November 25, 2024 against Officer Garvin. He alleges that Officer Garvin violated his constitutional rights and requests relief in the form of a declaratory judgment, monetary damages, and camera footage and any other evidence of the February 7, 2023 alleged excessive force incident.[3] (*Id.* at 7.)

---

[3] Declaratory relief is unavailable to adjudicate past conduct, so Gordon's request is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84; *see also Taggart v. Saltz*, 855 F. App'x 812, 815 (3d Cir. 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

Additionally, in the "Introduction" section of the handwritten Complaint, Gordon states that he seeks injunctive relief pursuant to the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). (*See* Doc. No. 2 at 1.) Because the Complaint does not provide any factual basis for claims under the ADA or RA, or otherwise discuss the ADA or RA, the Court understands the reference to these statutes to be in error. In any event, a passing reference to a legal principle is not sufficient to raise a

3

## II.     STANDARD OF REVIEW

The Court will grant Gordon leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At this early stage of the litigation, the court must accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

---

claim thereunder.  *See Campbell v. LVNV Funding, LLC*, No. 21-cv-5388, 2022 WL 6172286, at *7 n.10 (E.D. Pa. Oct. 7, 2022) (stating that a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other." (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))); *Alexis v. Sessions*, No. 18-cv-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018).  Nor is there any apparent basis for injunctive relief because the Complaint reflects that Gordon is now incarcerated at SCI Rockview and is no longer subjected to Officer Garvin, who is employed at SCI Phoenix.  *See Robinson v. Cameron*, 814 F. App'x 724, 725 (3d Cir. 2020) (dismissing appeal as moot where suit sought only injunctive relief and inmate was no longer in custody); *Griffin v. Beard*, 401 F. App'x 715, 716 (3d Cir. 2010) (*per curiam*) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." (quoting *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003)).

[4] However, since Gordon is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

As Gordon is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.*  However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support." (quoting *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002))).

### III.   DISCUSSION

Gordon alleges violations of his constitutional rights under 42 U.S.C. § 1983.  (*See* Doc. No. 2 at 1, 3–4.)  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a Section 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

The Court understands Gordon to allege that he was subjected to excessive force in violation of his Eighth Amendment rights and that he was subjected to retaliation in violation of

his First Amendment rights. (*See* Doc. No. 2 at 3–4.) As explained below, Gordon has plausibly stated an excessive force claim but has not plausibly stated any retaliation claims.[5]

### A.     Excessive Force Claim

Gordon alleges that Officer Garvin and a John Doe officer, who is not named as a defendant in this case, used excessive force against him on February 7, 2023. (Doc. No. 2 at 2.) The Eighth Amendment's prohibition of cruel and unusual punishments forbids prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). The court must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. "Force that is used 'maliciously and sadistically for the very purpose of causing harm' violates the Eighth Amendment." *Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

Courts look to several factors to determine whether excessive force has been used in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) ''the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000 (quoting *Whitley*, 475 U.S. at 321)). Although the extent of an inmate's injuries is relevant to an Eighth Amendment analysis, "there is no fixed minimum quantum of injury that a prisoner

---

[5] Although he includes case law concerning conditions of confinement claims (*see* Doc. No. 2 at 3), Gordon presents no factual allegations in support of such claims. Consequently, the Court will not consider any such claims.

must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force." *Id.* at 104.  Thus, the inquiry must be driven by the extent of the force and the circumstances in which it is applied, not by the resulting injuries.  *Id.* at 108.  Nonetheless, the Eighth Amendment does not protect against a *de minimis* use of physical force, so long as it is not of a sort "repugnant to the conscience of mankind." *Brooks*, 204 F.3d at 107 (quoting *Hudson*, 503 U.S. at 10).

Gordon has plausibly alleged Eighth Amendment claims against Officer Garvin based on the use of excessive force.  Gordon alleges that he reacted to "one of Officer Garvin[']s verbal threats"[6] and, while handcuffed and walking to the yard of the Level 5 housing unit, he jumped at Officer Garvin in an attempt to strike him.  (*See* Doc. No. 2 at 2.)  He claims that Officer Garvin "started to throw punches even after [Gordon] surrendered" and that a "John Doe officer in the yard started punching [Gordon]," and he was "handcuff[ed] the entire time that both officers jumpped [sic] [him]." (*Id.*)  "Punching and kicking someone who is handcuffed behind his back . . . is 'repugnant to the conscience of mankind,' absent the extraordinary circumstances necessary to justify that kind of force." *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (quoting *Hudson*, 503 U.S. at 10).  While Gordon does not allege the extent of injuries he sustained, if any, from either officer's use of force, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer

---

[6] Verbal harassment of a prisoner, even if offensive, does not give rise to an independent constitutional violation.  *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (*per curiam*) (holding that threats that inmate was a "marked man and that his days were numbered" were insufficient to support an Eighth Amendment claim); *Ayala v. Terhune*, 195 F. App'x 87, 92 (3d Cir. 2006) (*per curiam*) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983."); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."), *abrogated on other grounds*, *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020).

serious injury." *Hudson*, 530 U.S. at 4; *see Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (reversing dismissal of a prisoner's excessive force claim "based entirely on [the district court's] determination that his injuries were '*de minimis*'" as contrary to the Supreme Court's rejection in *Hudson* of a "significant injury" threshold requirement for stating an excessive force claim). Accordingly, Gordon's allegations are sufficient to state plausible excessive force claim against Officer Garvin.

### B.     Retaliation Claim

Gordon attempts to present a First Amendment retaliation claim. (*See* Doc. No. 2 at 4.) To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*). A prisoner's filing of a grievance or expressing an intent to file a grievance constitutes constitutionally protected conduct. *Watson v. Rozum*, 834 F.3d 417, 422–23 (3d Cir. 2016); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson*, 834 F.3d at 423 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). "[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions." *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170); *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (*per curiam*) ("In the prison context, we have held that the following actions were sufficient to establish adversity: several months in disciplinary

confinement; denial of parole, financial penalties, and transfer to an institution whose distance made regular family visits impossible; and placement in administrative segregation that severely limited access to the commissary, library, recreation, and rehabilitative programs."). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Ruttle v. Brady*, No. 22-3000, 2023 WL 5554648, at *2 (3d Cir. Aug. 29, 2023) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Here, Gordon alleges that he filed a grievance against Officer Garvin on January 27, 2023, for "threats, humiliation, and mental abuse." (Doc. No. 2 at 2.) He also attached to his Complaint a grievance dated February 8, 2023 regarding the alleged excessive force incident. (*See id.* at 8.) He claims that his grievance appeal was sabotaged, although it is unclear from the Complaint to which grievance he refers. (*See id.* at 2, 8.) Gordon further asserts that "the prison officials['] retaliation happen[ed] when they did not respond to grievances and/or prevent[ed] an inmate access to [the] prison grievance system. . ." (*Id.* at 4.)

Although the filing of a grievance is protected conduct, it is unclear from the Complaint what alleged adverse action Gordon believes he experienced as a consequence for exercising his constitutional rights, and what, if any, facts support an inference that the constitutionally protected conduct was a substantial or motivating factor for the adverse action. Accordingly, Gordon's undeveloped allegations are insufficient to support plausible retaliation claims.[7] *See*

---

[7] To the extent Gordon seeks to assert a claim based on the grievance process itself, such claim fails. Claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, allegations such as those raised by Gordon predicated on failures of the grievance process or improper handling of or response to grievances do not

*Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, these conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation."); *Hammonds v. Headman*, 645 F. App'x 149, 152 (3d Cir. 2016) (*per curiam*) ("[B]ecause Hammonds' conclusory allegations fail to raise the required inference of a causal link between his grievance and the filing of misconduct reports, he failed to state a retaliation claim."); *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

Accordingly, Gordon's allegations are insufficient to state a plausible retaliation claim against Officer Garvin.  Gordon will, however, be given an opportunity to amend his Complaint if he can, in good faith, cure the deficiencies identified in this Memorandum.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Gordon leave to proceed *in forma pauperis*.  As set forth more fully above, the Court is prepared to serve Gordon's excessive force claim.  However, the Court will dismiss the retaliation claim in the Complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Gordon will be given leave to file an amended complaint consistent with this Memorandum.[8]  In the alternative, Gordon may

---

give rise to a constitutional claim.  *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

[8] If Gordon chooses to file an amended complaint, the amended complaint must be a complete document that does not rely on the initial Complaint or other papers filed in this case to state a claim.  Although Federal Rule of Civil Procedure 15 contemplates amended pleadings, "an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019).  "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.*  While the Court must liberally construe *pro se* pleadings, "liberal construction of a pro se

advise the Court that he seeks to proceed only on the excessive force claim, which passes statutory screening.  An appropriate Order follows, which provides further instruction about amendment.

---

amended complaint does not mean accumulating allegations from superseded pleadings." *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019).  This means that the submission of an amended complaint "effectively constitutes an abandonment of any prior complaints filed by a plaintiff." *Smith v. Price*, No. 11-cv-1581, 2012 WL 1068159, at *4 (M.D. Pa. Mar. 5, 2012), *report and recommendation adopted*, No. 11-cv-1581, 2012 WL 1072282 (M.D. Pa. Mar. 29, 2012).